## 44539. SANDERS v. THE STATE.
### (357 SE2d 66)

MARSHALL, Chief Justice.

Rose Mary Sanders appeals from her conviction of the malice murder of Willie Roy Shell, for which she was sentenced to life imprisonment.[1] We affirm.

Evidence was adduced at the trial to the following effect. The appellant and the victim, Shell, dated off and on for 14 months, even though he was married to someone else. She and her four children

---

[1] The homicide occurred on September 9, 1985. The verdict of the trial jury was returned on February 26, 1986, and Sanders was sentenced to life imprisonment on February 28, 1986. She moved for a new trial on March 19, 1986. The transcript of evidence was filed on June 20, 1986. The motion for new trial was amended on July 18 and December 5, 1986, and denied on January 15, 1987. Notice of Appeal was filed on January 30, 1987. The appeal was docketed in this court on April 10, 1987, and argued on June 1, 1987.

lived with the victim for a short time in the fall of 1984, until he went back to his wife. In July 1985, the appellant and Shell began living together a second time, in an apartment in Savannah. On September 9, 1985, the victim came home from work at 10:30 p.m. and began to pack his belongings. The appellant went into the bedroom and asked Shell if he planned to leave, to which he responded that he was going back to his wife. She told him that she noticed his removing his belongings piece by piece, and requested that, if he was going to leave, he do so that night. After a discussion, the appellant put on her clothes, and stated that she was going for a walk.

While continuing to pack, the decedent took a nine-shot, .22-caliber revolver from a drawer and laid it on the bed. When Shell turned his back to her, the appellant, who was sitting on the bed, picked up the gun and began firing at him. She hit the victim five times: in the back, the right wrist, the forearm (which was in a defensive position at the time), and the chest (the aorta — the fatal wound). The two struggled with the gun briefly before the victim collapsed on the floor. When Savannah police arrived, they found the victim dead, lying on the bedroom floor, and the appellant was wiping blood from a wall with a towel.

1. The appellant contends that the trial court erred in allowing her statements to law-enforcement officers in evidence.

(a) At the conclusion of the *Jackson-Denno* hearing, the trial court ruled: "I find no reason, either factually or legally, why the statements can't be introduced in evidence. Put the jury in the box." The appellant argues in enumerated error 1 that the court's conclusion that the statement/confession was voluntary did not appear from the record with unmistakable clarity. *Parker v. State*, 255 Ga. 167 (1) (336 SE2d 242) (1985) and cits.; *Walraven v. State*, 250 Ga. 401 (4a) (297 SE2d 278) (1982) and cits. Even if the appellant is deemed not to have waived any objections as to the specificity of the ruling by her failure to object thereto at the time of trial, we hold that the conclusion of voluntariness appears from the record with unmistakable clarity, especially considering that the whole tenor of the hearing had been toward the issue of voluntariness.

(b) In enumerated error 2, the appellant contends that the trial judge erred in denying her motion for a continuance during the second *Jackson-Denno* hearing. Even assuming that there was contradictory testimony at the two hearings, and further assuming that there is a constitutional right to have a single judge hear the entire proceeding at one time to ensure a fair and impartial decision by the trial judge, as the appellant urges, there was no harmful error here, as the judge who tried the case held a hearing on all the statements which the appellant contested, enabling him to make a ruling as to their admissibility.

(c) In enumerated error 4, the appellant contends that her statements were erroneously found to have been voluntary. "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld on appeal. [Cits.]" *Berry v. State*, 254 Ga. 101, 104 (1) (326 SE2d 748) (1985). The finding was authorized by testimony that the appellant made spontaneous, voluntary, precustodial statements to the two investigating officers at the scene of the crime, without any questioning, threats, or promises on their part; that these statements were interrupted by their giving her the *Miranda* warnings, after which she continued her statement; that the appellant had indicated that she understood the *Miranda* warnings, but did not request an attorney; and that she had made later consistent custodial statements after having been advised again of her *Miranda* rights. The appellant's contention that the second statement was inadmissible as tainted by the first statement — is not borne out by the evidence, which shows that the officer who took the second statement was unaware when he made his report that the first statement had been given by the appellant.

2. The appellant contends that the trial court improperly limited her cross-examination of two witnesses during the first *Jackson-Denno* hearing.

(a) There was no such error as to witness Officer Snowden, regarding the issue of the waiver of assistance of counsel by the appellant. This was an issue for determination by the trial judge; the witness had answered counsel's question more than once when the court intervened; and the witness was again subject to cross-examination at the second *Jackson-Denno* hearing. Enumerated error 3 is without merit.

(b) There was likewise no such error as to witness Detective Chappell. The appellant did not object to the trial court's sustaining of a "hearsay" objection to her question of the witness as to whether the victim's wife had informed the witness that the victim had threatened his wife with the gun apparently used in the murder. Thereafter, the appellant likewise did not object to the sustaining of an objection to her question: "In your conversation with Officer Burrows, do you have any reason to dispute what Officer Burrows told you about what happened?" Although the appellant was not required to object to the court's sustaining the state's objection to these questions, however, the questions were properly excluded on the grounds of hearsay and calling for the conclusion of the witness. *Proctor v. State*, 235 Ga. 720, 725-6 (221 SE2d 556) (1975) and cits. Enumerated error 5 is without merit.

3. In enumerated error 6, it is contended that the trial court erred in allowing the state to impeach its own witness. On cross-examination, the appellant questioned state's witness Detective Chappell as to

whether he thought, based upon his view of the crime scene, that the appellant had attempted to hide anything at the crime scene. He had not testified to anything of this nature in his direct testimony. On redirect examination, the prosecution questioned the witness concerning a photograph of the crime scene, and asked: "All right, Sir, now we'll get into what counsel was referring to about trying to hide something. When you first arrived at the scene, did you examine the interior of the room itself?" In response to the appellant's objection that the prosecution was attempting to impeach its own witness, the prosecution stated that it was not attempting to impeach the witness, but was attempting to get some testimony concerning the crime scene, as the crime scene was depicted in a photograph. The witness was then questioned as to the location of certain blood spots found in the room.

It is not apparent that there was an attempt to impeach the witness. Rather, it was an attempt to present further testimony concerning the crime scene. The witness identified the photograph of the crime scene that was later used to argue an inference to the jury. There was testimony that the appellant was wiping blood off a wall with a towel when officers entered the room. However, even if there was an attempt at impeachment, no error occurred, as no impeaching testimony concerning this witness and the crime scene was introduced.

4. It was not error, as contended in enumerated error 7, to admit in evidence photographs of the victim's body prior to autopsy and of the crime scene, which, though gruesome, were relevant and material to show the location of the wounds, *Lamb v. State*, 241 Ga. 10 (2) (243 SE2d 59) (1978), and to depict the crime scene, including the location of the victim. *Stewart v. State*, 254 Ga. 233 (3) (326 SE2d 763) (1985).

5. The denial of the motion for a directed verdict was not error, as argued in enumerated error 8. There was evidence which would authorize a rational trier of fact to find beyond a reasonable doubt that the appellant, angered by the fact that her lover was leaving her, maliciously shot him in the back, thereby committing malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

6. Enumerated error 9 is the trial court's inadvertent use of the term "manslaughter" instead of the intended "assault" in the following recharge to the jury: "Now, if you find and believe beyond a reasonable doubt that the defendant committed the homicide alleged in the bill of indictment at a time when he [sic] was engaged in the commission of the felony of aggravated *manslaughter* [sic; assault], then you'd be authorized to find her guilty of murder." (Emphasis supplied.) The correct term was charged in the original instruction and elsewhere in the recharge, and the charge as a whole substantially

presented the issues in an understandable way. "A mere verbal inaccuracy in a charge resulting from a palpable 'slip of the tongue,' which clearly could not have misled or confused the jury, is not reversible error . . . [Cits.] 'A mere slip of the tongue is considered harmless when considered in the light of the entire charge.' [Cit.]" *Payne v. State*, 171 Ga. App. 150, 151 (2) (318 SE2d 826; 319 SE2d 826) (1984).

7. The trial court did not abuse its discretion in giving an unsolicited *Allen* instruction or "dynamite charge" to the jury. The decision as to the giving of such a charge does not depend upon a finding that the jury is deadlocked. *Kilpatrick v. State*, 255 Ga. 344 (1) (338 SE2d 274) (1986) and cits. "The issue in reviewing such charge is whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." *McMillan v. State*, 253 Ga. 520, 523 (4) (322 SE2d 278) (1984). See also *Romine v. State*, 256 Ga. 521 (1d) (350 SE2d 446) (1986); *Anderson v. State*, 247 Ga. 397 (3) (276 SE2d 603) (1981). The *"Allen* charge" given here has been approved by this court as not coercive. See *Anderson v. State*, supra, p. 401 (3) and cits. Although the jury was not deadlocked in this case, it had deliberated for approximately 40 minutes at the conclusion of the original charge and almost seven hours on the following day, and had had continuing questions about the evidence and the trial court's charge. Neither the giving of the charge nor the denial of the motion for a mistrial on account thereof, was error, as contended in enumerated errors 10 and 11.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 19, 1987 —
RECONSIDERATION DENIED JULY 8, 1987.

*Duffy & Feemster, Dwight T. Feemster,* for appellant.
*Spencer Lawton, Jr., District Attorney, John E. Morse, Jr., Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General,* for appellee.